IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES OESTREICH,

    Plaintiff,

v.                                      CASE NO. 1:06-cv-00242-SPM-AK

WAL-MART STORES EAST LP,

    Defendant.

_____/

## **REPORT AND RECOMMENDATION**

This *pro se* employment discrimination matter is before the Court on Doc. 32, Motion for Summary Judgment; Doc. 33, the Statement of Facts; and Doc. 34, Memorandum of Law, by Wal-Mart. Plaintiff was provided with the requisite ten-day *Brown/Griffith* notice regarding his right to respond to Defendant's motion, Doc. 36, but he has not filed any response, and the order was not returned as undeliverable. The time for responding has passed, and thus, this cause is in a posture for decision. Having carefully considered the matter, the Court recommends that the motion for summary judgment be granted.

## **BACKGROUND**

Pursuant to Fed. R. Civ. P. 56(e)(2), when a properly supported motion for summary judgment is made, the opposing party "may not rely merely on allegations...in its own pleading" but must respond with evidence setting "out specific facts showing a genuine issue for trial." If he fails "so [to] respond, summary judgment should, if appropriate, be entered against that

party." *Id*. Because Plaintiff has not responded to the motion, the Court relies on the unrefuted documents submitted by Defendant in support of its request for summary judgment for the following recitation of facts. Doc. 33

Plaintiff began working for Wal-Mart in 1995. In July, 2004, he transferred to Store # 538 in Gainesville, Florida, as an assistant manager. According to the store manager, Plaintiff was not very effective as an assistant. In the fall of 2004, the store manager counseled Plaintiff, who, for the first time, explained that his failures might be related to his injuries from a car accident over a year before the Gainesville transfer. At that meeting, Plaintiff advised the manager that he was going to need time off for back surgery.

On December 6, 2004, Plaintiff submitted a leave of absence request which had been signed by his doctor. The leave request was approved, and ten days later, Plaintiff had surgery to fuse vertebrae in his neck. The exact date that Plaintiff was to return to work was unknown, but the estimated return was set for February 9, 2005.

On March 1, 2005, Plaintiff submitted to the store manager a request for reasonable accommodation which included a letter from his doctor stating, "Mr. Oestreich's restrictions are: no lifting of greater than 20 pounds, no repetitive bending or twisting, pulling or pushing. These restrictions will be re-evaluated on his follow-up visit on March 25, 2005." The store manager forwarded the request to the coordinator who handled accommodation requests under the Americans with Disabilities Act (ADA).

During the first few months of Plaintiff's leave of absence, he received short term disability benefits. On April 1, 2005, Plaintiff applied for and was granted long term disability benefits. At that time, his doctor's restrictions, in pertinent part, included: no "prolonged"

standing, walking, or sitting; no lifting over ten pounds; no overhead reaching; no pushing or pulling. The doctor deemed these restrictions to be "indeterminate" in length.

On April 26, 2005, Plaintiff submitted another leave of absence request asking for continuous and intermittent leave beginning December 16, 2004 (the date of his first surgery), through December 16, 2005. The leave of absence was approved, and in May, 2005, Plaintiff underwent additional surgeries to have a neurostimulator implanted in his back.

Wal-Mart initially denied Plaintiff's request for reasonable accommodation under the ADA based on the vague and ambiguous nature of his alleged disability and the changing nature of his doctor's restrictions. Plaintiff hired an attorney to assist him, and the ADA coordinator explained to Plaintiff that he had failed to establish that he was disabled under the ADA. The coordinator advised Plaintiff that he could either present further medical information from his doctor explaining what was meant by "prolonged," or he could use a wheelchair to perform his assistant manager duties.

In September, 2005, Plaintiff submitted a note from his doctor stating that Plaintiff was not to stand, walk, or sit for more than two hours at a time and that his restrictions were "permanent," as opposed to "indeterminate." In response, the coordinator advised Plaintiff that while an inability to lift over 10 pounds is a substantial limitation on major life activities under the ADA, as the assistant manager, he was not required to do any heavy lifting. With regard to the inability to walk, sit, and stand for more than two hours, this was not a substantial limitation on a major life activity, and thus, Plaintiff was not disabled under the ADA with regard to walking or standing. Nevertheless, without specifically granting Plaintiff's request for reasonable accommodation, the coordinator advised Plaintiff that he could perform his duties as

assistant manager "within [his] other restrictions identified by [his] doctor, utilizing a wheelchair for mobility."

Approximately a month later, Plaintiff resumed his duties as assistant manager at Store # 538 in Gainesville. Shortly afterward, Plaintiff interviewed for the position of assistant manager at the new Starke, Florida, Wal-Mart and advised the manager of his lifting and mobility restrictions. The Starke manager confirmed the restrictions with the Gainesville manager and concluded that Plaintiff could not perform the essential functions of the assistant manager job at the Starke facility which required all managers to assist with building displays, stocking shelves, and teaching new employees these skills.

At some point before Plaintiff returned to work, he attended the funeral of a store associate where he made a comment to the effect that Defendant's demands on the decedent had caused her stress. Once he returned to work, the manager counseled Plaintiff that because he was a member of management, he should refrain from making public derogatory remarks about his employer.

In the fall of 2005, following a management meeting, Plaintiff complained to the store and district managers that another assistant manager had referred to the regional manager as a "cracker." In response, the district manager directed that an internal investigation be conducted. All of the persons who had attended the meeting were interviewed, but none had heard the word "cracker" used. Consequently, the investigation was closed for lack of supporting evidence.

On Thanksgiving Day, 2005, Plaintiff called the customer service manager's (CSM) 21-year-old daughter using a cell phone number he had gotten from the CSM's desk without her knowledge. The CSM complained to the store manager that Plaintiff was harassing her daughter

with multiple phone calls and that she believed he had left her daughter an inappropriate voice mail. The manager conducted an internal investigation which ended without Plaintiff being coached about his actions, and there is no evidence that he was otherwise disciplined.

On the day after Thanksgiving, several employees complained to the store manager that Plaintiff had openly accused another employee of violating Defendant's policy against understocking. Plaintiff was subsequently coached for conducting his investigation into the employee's activities in an open forum rather than in private and for violating company policy requiring respect for the individual. He challenged the coaching, which was investigated and upheld.

On December 26, 2005, Plaintiff saw a young teenager in the electronics department placing gaming components into a duffel bag. The customer walked through the store and then abandoned the shopping cart and merchandise before leaving the store. In response to Plaintiff's directions to stop the customer, a loss prevention associate stepped in front of the customer, and Plaintiff escorted the customer to the back of the store. Because the stop violated Defendant's policies, a second loss prevention associate refused to allow Plaintiff to question the customer in the loss prevention office. The police were called, but because the customer had not actually removed anything from the store, the officers told Plaintiff they could not do anything. When Plaintiff insisted that the police issue a trespass citation to the teenager so that he would not return to the store, the police took the customer to his parents and issued the citation.

Because Defendant has a policy requiring anyone involved in a "bad stop" immediately to contact his supervisor, the loss prevention associates sent the district loss prevention manager a fax regarding the incident with the teenager. The manager investigated the matter and

concluded that Plaintiff had violated company policy regarding the apprehension of a shoplifter, which requires that the alleged shoplifter be allowed to exit the store with the merchandise before he can be apprehended and allows the issuance of a company trespass letter only when the customer is apprehended for shoplifting and the merchandise is recovered.

Defendant considered Plaintiff's actions to be a gross violation of company policy and to have placed it in jeopardy of legal action by the teenager's parents. The district loss prevention manager therefore instructed the store manager to fire Plaintiff, and on January 16, 2006, he was terminated for gross misconduct.

## **DISCUSSION**

1. Violation of ADA.

In his amended complaint, Plaintiff alleges that he was subjected to a hostile work environment and terminated based on his disability, his record of having a disability, or Defendant's regard for him as having a disability. Doc. 8. He further claims that Defendant subjected him to a hostile work environment and then terminated his employment in retaliation for requesting reasonable accommodation. He claims that Defendant refused to accommodate his disability and prohibited him from returned to work until his attorney became involved. He also maintains that he was subjected to offensive jokes about his back condition, that his supervisor micromanaged him and fabricated charges against him, that his co-workers were told not to talk to him and were encouraged to file sexual harassment charges against him, and that he was falsely accused of stalking a co-worker and subjected to "vicious gossip and rumors." Though he complained to management, no corrective action was taken. In his view, between the time he returned from medical leave and his termination, he performed his job well, and he acted

within company guidelines and past practice in dealing with the customer he accused of trying to shoplift.

The Americans with Disabilities Act (ADA) prohibits discrimination against a "qualified individual because of the disability of such individual" in the terms and conditions of his employment. 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, a plaintiff must prove (1) that he has a "disability," (2) that he is a "qualified" person, and (3) that he was discriminated against because of his disability. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004). At the summary judgment stage, the plaintiff must come forward "with sufficient evidence to create genuine issues of material fact regarding each of those elements." *Harris v. H&W Contracting Co.*, 102 F.3d 516, 523 (11th Cir. 1996).

The ADA defines the term "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or being regarded as having such impairment. § 12102(2). To establish that he is "qualified," the employee must show that he can perform the essential functions of the job in question, with or without reasonable accommodation. *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

   A. Plaintiff was not "qualified" for assistant manager job at Starke store.

Defendant first claims that Plaintiff was not a qualified individual with respect to the assistant manager job at the Stark store because he could not perform the essential functions of the position. According to the undisputed evidence, an assistant manager, upon the opening of a new store such as the Starke facility, was required, as an essential part of his job duties, to be able to "build displays and stock shelves and to demonstrate and teach such skills to the

Associates." Doc. 33, Att. 3. Plaintiff has not disputed this description of the essential functions of an assistant manager's duties in the context of opening a new store, *see Davis*, 205 F.3d at 1305 (ADA requires, *inter alia*, that consideration be given to employer's judgment as to what functions of job are essential), or asserted that he could indeed fulfill these functions, either with or without reasonable accommodation. Therefore, as to this issue of whether Plaintiff was "qualified" for the Starke position, summary judgment should be granted to Defendant, as there is no genuine issue of material fact and Defendant is entitled to judgment of law on the issue.

        B.      Plaintiff did not suffer adverse employment action as to Starke position.

Defendant also argues that because the Starke assistant manager job would have been merely a lateral transfer for Plaintiff, he did not suffer an adverse employment action, and thus, Defendant did not violate the ADA when it denied him the job in Starke. "A lateral transfer that does not result in 'lesser pay, responsibilities, or prestige' is not [an adverse employment action]." *Barnhart v. Wal-Mart Stores, Inc*., 206 Fed. Appx. 890, 893 (11th Cir. 2006). Conversely, "the refusal to give an employee such a transfer cannot be an adverse employment action." *Id*.

Plaintiff has not come forward with any evidence to raise a genuine issue of material fact that a lateral transfer from the assistant manager job in Gainesville to the assistant manager job in Starke would have resulted in more pay, responsibilities, or prestige, and therefore, he has not shown that he suffered an adverse employment action under the ADA when he was not hired for the Starke job. Consequently, Defendant is entitled to summary judgment on this basis as well.

        C.      Plaintiff was afforded reasonable accommodation.

Even if Plaintiff had responded to the summary judgment motion, he could not seriously

have disputed that after he provided the requested medical information, Defendant reasonably accommodated his back condition. Indeed, Defendant was well within its statutory rights in requesting, before it extended Plaintiff any accommodation, proof that he was in fact disabled under the ADA, as opposed to being disabled under the terms of disability insurance coverage. *See* 42 U.S.C. § 12112(d)(3) & (4) (covered entity may make inquires into ability of an employee to perform job-related functions; supervisors and managers may be informed regarding necessary restrictions on work or duties of employee and necessary accommodations). Once the treating physician advised Defendant that Plaintiff's back condition and the limitations created by that condition were permanent, *see* 29 C.F.R. § 1630.2(j)(2) (in determining substantial limitation on major life activity, consideration should be given to duration and permanent impact of impairment), it extended to him a reasonable accommodation–the use of a wheelchair–even though it still did not consider him disabled, thereby meeting any obligation it may have had under the ADA. Plaintiff has not suggested the accommodation was not reasonable, and it matters not that the accommodation was not the one he might have preferred. *See Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285-86 (11th Cir. 1997) (ADA plaintiff is not entitled to accommodation of choice or maximum accommodation or every conceivable accommodation but only to reasonable accommodation). If anything, Defendant erred on the side of caution by making a wheelchair available. The motion for summary judgment should be granted on this claim as well.

    D.    Hostile work environment.

Defendant next requests summary judgment on Plaintiff's claim that he was harassed by his co-workers based on his disability and that the alleged harassment created a hostile work

environment. To establish a *prima facie* case of hostile work environment under the ADA, a plaintiff must prove (1) that he belongs to a protected group, (2) that he was subjected to unwelcome harassment, (3) that the harassment was based on a protected characteristic, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and (5) that the employer is either directly or vicariously responsible for the abusive work environment. *Burgos v. Chertoff*, 274 Fed. Appx. 839 (11th Cir. 2008).

Even if the Court assumes that Plaintiff can survive summary judgment on all of the other elements for establishing a hostile work environment claim, he cannot prevent summary judgment on the issue of whether the alleged harassment was so severe or pervasive that it altered the terms and conditions of his employment. It is insufficient as a matter of law that Plaintiff was personally offended by the alleged jokes and whispers of his co-workers or that their behavior was otherwise "subjectively abusive" unless he also shows that a "reasonable person" would likewise have found the incidents (which, except for the ones noted previously, are at best vague and tenuous) objectively hostile or abusive. *Woodruff v. School Board of Seminole County*, 2008 WL 5265810, at *3 (11th Cir. Dec. 19, 2008). There is simply insufficient evidence to raise a genuine issue of material fact that the alleged discriminatory conduct was frequent, severe, physically threatening or humiliating or "'mere offensive utterance[s],'" or unreasonably interfered with Plaintiff's work performance. *Id*. In short, Defendant should be granted summary judgment on this claim.

E.  Retaliation.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that "(1) he engaged in statutorily protected expression, (2) he suffered an adverse employment

action, and (3) the adverse action causally was related to the protected expression." *Sicilia v. United Parcel Service, Inc.*, 279 Fed. Appx. 936, 939 (11th Cir. 2008). The causal connection is made by showing that "the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity." *Id*.

Plaintiff's complaint charges that the "statutorily protected expression" was his request for accommodation; however, there is no evidence to support or even raise an inference that his termination was causally related to his accommodation request. The person who directed the investigation and Plaintiff's firing, Melanie Clemons, was, without dispute from Plaintiff, unaware that Plaintiff had engaged in any protected activity at all. Instead, her decision to terminate Plaintiff's employment was based solely on her conclusion that Plaintiff had acted improperly in his handling of the underage customer and had opened the door to legal action against Defendant by his parents. Though Plaintiff may have acted on this final occasion as he had acted many other times under similar circumstances, that fact alone is little more than a mere scintilla of evidence in Plaintiff's favor and does not mandate a findin that his termination was based on anything other than his handling of the incident under immediate review. Thus, Defendant's motion for summary judgment should be granted on Plaintiff's claim of retaliation.

F.   Defendant had legitimate, non-discriminatory reason for termination.

Assuming *arguendo* that Plaintiff could initially survive summary judgment at the *prima facie* stage of each claim, once Defendant articulates a legitimate, non-discriminatory reason for terminating his employment, i.e., that Plaintiff mishandled the incident with the minor customer, thereby committing gross misconduct in violation of company policy, Plaintiff must come

forward with evidence at least to raise a genuine issue of material fact that this reason was a mere pretext for discrimination. In carrying this burden, it is insufficient that Plaintiff does not agree with Defendant's assessment of his actions or that he sincerely believes that Defendant has discriminated against him, and it is not within this Court's province to second-guess legitimate business decisions by a defendant. Instead, Plaintiff must meet Defendant's reason "head on and rebut it," *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000), and present sufficient evidence from which a trier of fact could reasonably find that Defendant improperly terminated Plaintiff's employment because of his disability or because he engaged in statutorily protected activity. Again, a mere scintilla of evidence is insufficient to rebut the articulation of a legitimate, non-discriminatory reason for termination.

Here, Plaintiff has presented nothing to suggest that Defendant's stated reason for its termination of Plaintiff's employment was a cover-up for discrimination. Accordingly, summary judgment should be granted on this basis as well.

   2.   Violation of state law.

Plaintiff has alleged identical claims of discrimination and retaliation based on his handicap under Florida state law as well. *See* Doc. 17. These claims are analyzed under the same standards governing the federal claims, see *Sicilia*, 279 Fed. Appx. at 938-39, and for the reasons previously stated, the state law claims fail as well, and summary judgment should be granted to Defendant on these claims.

## **CONCLUSION**

Having carefully considered the matter, the Court respectfully **RECOMMENDS** that Defendant's motion for summary judgment, Doc. 32, be **GRANTED** and that this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this __*12*<sup>th</sup>__ day of February, 2009.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**